UNITED STATES of America, Plaintiff,

v.

John PINER and Salvatore Gallina, Defendants.

No. CR 78–0023 WWS.

United States District Court, N. D. California.

June 21, 1978.

G. William Hunter, U. S. Atty., Floy E. Dawson, Asst. U. S. Atty., San Francisco, Cal., for plaintiff.

Kim LaValley, San Francisco, Cal., for John Piner.

Joel A. Shawn, Kipperman, Shawn, Keker & Brockett, San Francisco, for Salvatore Gallina.

## OPINION GRANTING MOTION TO SUPPRESS EVIDENCE AND DENYING MOTION FOR REHEARING

WILLIAM W. SCHWARZER, District Judge.

Defendants Salvatore Joseph Gallina and John Piner are charged in a four count indictment with importation of marijuana (21 U.S.C. § 952(a)), conspiracy to import marijuana (21 U.S.C. § 963), possession of marijuana with intent to distribute (21 U.S.C. § 841(a)(1)), and conspiracy to possess marijuana with intent to distribute (21 U.S.C. § 846). They have moved to suppress in excess of 2¼ tons of marijuana seized on the boat on which they were sailing. Defendant Gallina also moved to suppress a statement allegedly made during interrogation conducted after he had requested the assistance of counsel. By order dated March 16, 1978, this Court granted defendants' motion to suppress the marijuana. The government has moved for rehearing.

In view of the vigor and earnestness with which the government has urged the Court to change its prior ruling, and the seeming complexity and far-reaching ramifications of the issue at hand, the Court has again reviewed and considered the relevant decisions and statutes and reflected on its decision at some length. For the reasons stated below, the Court has concluded that its prior ruling should stand.

## I. FACTS

The controlling facts are not disputed. On the evening of January 12, 1978, United States Coast Guard vessel 41393 was cruising the waters of San Francisco Bay on a routine law enforcement patrol. The crew was undecided about where to patrol but finally determined to proceed to Racoon Straits, located between Tiburon and Angel Island, hoping, according to the captain, to spot a vessel because it was a "slow" night and they wanted to board "at least one boat."

At approximately 6:30 P.M., one of the crew spotted the starboard running light of defendants' sailboat, the Delphene. Captain Tyler of the Coast Guard vessel "immediately decided to board" the Delphene because:

> "1. It was underway. 2. It was the only vessel other than a tug or ferry we had sighted. 3. I will board every underway boat I see on a slow night. 4. The weather was such that it made a pleasure cruise unlikely." (Tyler statement.)

It is undisputed that the Coast Guard had neither probable cause nor a founded suspicion that the Delphene was in violation of any law or regulation.

Coast Guardsman Murphy hailed the Delphene, saying, "This is the United States Coast Guard, maintain your present course and speed and prepare to be boarded." The Delphene complied and the Coast Guard vessel came alongside. As Murphy came aboard, one of the defendants inquired, "Why are you boarding us?" Murphy replied, "Skipper this is a routine safety inspection." Once on board, but not until

then, Murphy observed through an open door what appeared to be bags of marijuana in the cabin below the deck. He immediately placed defendants under arrest, seized the boat, and conducted a thorough search recovering over 4,000 pounds of marijuana.

## II. DEFENDANTS' MOTION TO SUPPRESS

Defendants have moved to suppress the marijuana seized on board of the Delphene on the ground that the evidence was the fruit of a search prohibited by the Fourth Amendment.[1] The motion requires the Court to determine whether the intrusion was reasonable under the Fourth Amendment.

Searches of vessels at sea have historically been conducted by the Coast Guard and by agencies with similar responsibilities such as the Customs Service.[2] Those searches, including the boarding and inspecting of vessels, fall generally into three categories: (1) customs searches; (2) searches founded on probable cause or articulable facts giving rise to a reasonable suspicion of a violation of law; and (3) administrative inspections to enforce marine safety regulations.

Inasmuch as the government has not sought to justify the search as a customs search under 19 U.S.C. § 1581(a), conducted at the border or its functional equivalent, we need not concern ourselves with the discrete body of law governing the permissible scope of such searches.[3]

Nor does the government contend that the boarding officers had probable cause or

1. The Fourth Amendment provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

2. See, *Maul v. United States*, 274 U.S. 501, 47 S.Ct. 735, 71 L.Ed. 1171 (1927); Comment, *At Sea With the Fourth Amendment*, 32 U.Miami L.Rev. 51 (1977).

3. In the context of customs searches, the Ninth Circuit has repeatedly recognized that occupants of boats have an expectation of privacy, see, *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), protecting them against warrantless searches which do not qualify as border searches. See, *United States v. Solmes*, 527 F.2d 1370 (9th Cir. 1975); *United States v. Tilton*, 534 F.2d 1363 (9th Cir. 1976); *United States v. Stanley*, 545 F.2d 661 (9th Cir. 1976), aff'd. —— U.S. ——, 98 S.Ct. 2261, 56 L.Ed.2d 757 (1978).

a reasonable suspicion that a violation of law was occurring. Hence this case is not controlled by the law governing the permissible scope of searches of particular persons or premises on the basis of individualized suspicion.[4]

Instead this case involves an administrative inspection, here conducted in allegedly random fashion, to ascertain compliance with and to enforce boat safety regulations. Cf. *United States v. Davis,* 482 F.2d 893, 908 (9th Cir. 1973) (administrative inspections permissible without individualized suspicion).

The general principles governing the application of the Fourth Amendment to administrative inspections or searches were recently summarized by the Supreme Court in *Marshall v. Barlow's Inc.,* —— U.S. ——, 98 S.Ct. 1816, 56 L.Ed.2d 305 (May 23, 1978). In that decision, the Court held a warrantless intrusion on private property to investigate compliance with statutory safety requirements to be prohibited. See, also, *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); *See v. City of Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967).

That the detention and boarding of the Delphene by the Coast Guard constituted an intrusion sufficient to invoke Fourth Amendment principles is beyond question. See, *Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Brignoni-Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).[5] Nor does the government contend that defendants consented to the boarding and inspection of the Delphene. Cf. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (consent determined from totality of circumstances).

The government argues, however, that the Coast Guard inspection fell within the

---

4. In *United States v. Odneal,* 565 F.2d 598 (9th Cir. 1977), cert. denied, 435 U.S. 952, 98 S.Ct. 1581, 55 L.Ed.2d 803 (1978), the Ninth Circuit upheld the reasonableness of the detention of a vessel on the high seas for the purpose of informing the crew of observed safety hazards (defective rigging and dragging lines) and checking the vessel's registration where it displayed only temporary registration numbers and no name or home port. The boarding in that case did not occur until after Coast Guard personnel had detected a strong odor of marijuana coming from the vessel as they pulled alongside. As a result, probable cause developed for the boarding and search. *Odneal* establishes only that observed hazardous conditions on a vessel justify its brief detention at sea. The court left open the question at issue here, whether the warrantless boarding of a vessel to conduct a safety inspection is permissible in the absence of probable cause or reasonable suspicion.

5. A series of decisions by the Fifth Circuit Court of Appeals, relied on by the government, appear to have treated vessel safety inspections as being beyond the purview of the Fourth Amendment. In *United States v. Odom,* 526 F.2d 339 (5th Cir. 1976), the court held that 14 U.S.C. § 89(a) authorized the Coast Guard to board a vessel on the high seas to conduct an administrative safety inspection. Although confronted with a motion to suppress, the court did not discuss the Fourth Amendment issue. *Odom* was followed without discussion in *United States v. Hillstrom,* 533 F.2d 209 (5th Cir. 1976), cert. den., 429 U.S. 1038, 97 S.Ct. 734, 50 L.Ed.2d 749 (1977), and again in *United States v. Warren,* 550 F.2d 219 (5th Cir. 1977), cert. denied 434 U.S. 1016, 98 S.Ct. 735, 54 L.Ed.2d 762. In the latter case, the court reversed a conviction based on evidence obtained during a warrantless search of a vessel by DEA and Customs Agents, following a Coast Guard safety inspection. With respect to the lawfulness of the inspection, however, it stated that Section 89(a) had been held constitutional by the Fifth Circuit although it acknowledged, without elaboration, that

"§ 89(a), with its broad granting of power, is subject to serious constitutional attack if implemented without caution and restraint." (550 F.2d at 224)

The case on which the *Warren* panel relied as authority for the constitutional validity of Section 89(a), *United States v. One 43 Foot Sailing Vessel,* 538 F.2d 694 (5th Cir. 1976), *affirming,* 405 F.Supp. 879 (1975), is, however, distinguishable for the boarding in that case occurred after the vessel was observed at night proceeding without running lights in clear violation of safety regulations.

Although the earlier of the cited decisions imply a view that these safety inspections are not subject to Fourth Amendment scrutiny, the quoted statement in *Warren,* as well as the Supreme Court decisions hereafter discussed, compel the conclusion that Coast Guard safety inspections must pass muster under the Fourth Amendment.

exception to the warrant requirement recognized in *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972), and *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970). These cases were described by the Supreme Court in *Barlow's* as:

"exceptions . . . [which] represent responses to relatively unique circumstances. Certain industries have such a history of government oversight that no reasonable expectation of privacy could exist for a proprietor over the stock of such an enterprise." —— U.S. at ——, 98 S.Ct. at 1821.

 While the operation of small craft such as the Delphene is subject to federal safety regulation, it is not a federally licensed and regulated activity to the same degree as the liquor or firearms business.[6] A person engaging in either of those activities in effect consents to the restrictions under which he must conduct them, including inspections of the premises on which the business is conducted.[7] As the Court pointed out in *Barlow's*, however, "closely regulated industry of the type involved in *Colonnade* and *Biswell* is the exception." at ——, 98 S.Ct. at 1821. The clear import of that decision is that the mere existence of federal safety regulations does not negate the expectation of privacy of persons engaged in the activity to which such regulations apply.[8]

 Even if it were assumed that persons engaged in boating had a diminished expectation of privacy by reason of federal safety regulations, they cannot be said to have waived all of the protection afforded by the Fourth Amendment. Thus, any warrantless on-board inspection remains subject to scrutiny respecting its reasonableness considering (1) the degree of intrusion in relation to the public need served, and (2) the degree of discretion exercised by the inspecting official in determining the time, place and object of the inspection. See, *United States v. Martinez-Fuerte*, 428

---

**6.** The boarding of vessels by Coast Guard personnel to conduct safety inspections as well as enforce other laws is authorized by 14 U.S.C. § 89(a) which provides:

"(a) The Coast Guard may make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, for the prevention, detection, and suppression of violations of laws of the United States. For such purposes, commissioned, warrant, and petty officers may at any time go on board of any vessel subject to the jurisdiction, or to the operation of any law, of the United States, address inquiries to those on board, examine the ship's documents and papers, and examine, inspect, and search the vessel and use all necessary force to compel compliance. When from such inquiries, examination, inspection, or search it appears that a breach of the laws of the United States rendering a person liable to arrest is being, or has been committed, by any person, such person shall be arrested or, if escaping to shore, shall be immediately pursued and arrested on shore, or other lawful and appropriate action shall be taken; or, if it shall appear that a breach of the laws of the United States has been committed so as to render such vessel, or the merchandise, or any part thereof, on board of, or brought into the United States by, such vessel, liable to a fine or penalty and if necessary to secure such fine or penalty, such vessel or such merchandise, or both, shall be seized."

The existence of statutory authority does not, however, immunize a search against Fourth Amendment scrutiny. *Almeida-Sanchez v. United States*, 413 U.S. 266, 272, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973); *United States v. Bowen*, 500 F.2d 960 (9th Cir. 1974), aff'd. 422 U.S. 916, 95 S.Ct. 2569, 45 L.Ed.2d 641 (1975). Nor would it seem that the longevity of a regulatory scheme is controlling on the issue of the reasonableness of inspections. *Marshall v. Barlow's, Inc.*, above, —— U.S. at ——, 98 S.Ct. 1816 (Justice Stevens dissenting); *United States v. Davis*, above, 482 F.2d at 905.

**7.** In *Biswell* the regulatory scheme provided, among other things, that "[e]ach licensee is annually furnished with a revised compilation of ordinances that describe his obligations and define the inspector's authority. The dealer is not left to wonder about the purposes of the inspector or the limits of his task." 406 U.S. at 316, 92 S.Ct. at 1596. The regulations provided that inspections would take place during business hours, on the business premises and would extend to records required to be kept and firearms and ammunition kept or stored by the dealer on his premises.

**8.** Few businesses or other activities remain free of federal safety regulation. A Fourth Amendment exception on that basis would swallow the rule.

U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976) (upholding warrantless identification stop at fixed border check point); *United States v. Davis*, above, (upholding baggage inspection of all boarding airline passengers.)[9]

 The instant inspection cannot meet the test of reasonableness. The Coast Guard selected the Delphene arbitrarily and boarded her after dark during inclement weather. The unexpected boarding of their vessel under those circumstances is certain to create anxiety in the occupants, aggravating the degree of intrusion. See, *United States v. Ortiz*, 422 U.S. 891, 894–5, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1974); *United States v. Martinez-Fuerte*, above, 428 U.S. at 558, 96 S.Ct. 3074. The personnel conducting the inspection acted free of any restraint upon their discretion. As the Court said in *Barlow's*, above:

> "The authority to make warrantless [administrative] searches devolves almost unbridled discretion upon executive and administrative officers, particularly those in the field, as to when to search and whom to search." —— U.S. at ——, 98 S.Ct. at 1825.

The Court is not convinced that a procedure under which the Coast Guard must obtain a warrant or which otherwise circumscribes the discretion of its personnel at sea to board vessels will seriously burden or diminish the effectiveness of the regulatory system. *Marshall v. Barlow's, Inc.*, above at ——, 98 S.Ct. 1816. The public interest in the enforcement of boat safety regulations has not been shown to be a matter of such urgency as to justify the boarding by Coast Guard personnel at all hours and places of boats selected by them in their unrestrained discretion. The enforcement problem confronting the Coast Guard is no more serious than that confronting the Border Patrol whose roving discretionary patrol stops and searches have been held to infringe Fourth Amendment interests. See, *Almeida-Sanchez v. United States*, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973); *United States v. Brignoni-Ponce*, above; *United States v. Ortiz*, above.

For these reasons, the Court concludes that in the absence of an administrative warrant or its equivalent restraining the discretion of the inspecting officials, the boarding conducted in this case violates the Fourth Amendment.[10] Accordingly, the

---

**9.** The border and airport search cases are analogous because they involve inspections made without individualized suspicion directed at particular persons. See, *United States v. Ramsey*, 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977). Those decisions establish that inspections at fixed check points of all traffic are not regarded as offensive while roving inspections of vehicles picked at discretion are. Compare, *Almeida-Sanchez v. United States*, above, with *United States v. Martinez-Fuerte*, above. See, also, *United States v. Montgomery*, 182 U.S. App.D.C. 426, 561 F.2d 875 (1977); Note, *Automobile License Checks*, 60 Va.L.Rev. 666 (1974), suggesting that systematic procedures must be used to insure randomness.

**10.** The validity of an area-wide administrative warrant, and the precise circumstances under which it could be lawfully issued, have not yet been squarely passed on by the Supreme Court. See, *Almeida-Sanchez v. United States*, above, 413 U.S. at 270, note 3, 93 S.Ct. 2535. The instant ruling does not turn on the availability of such a warrant, but rather on the absence of a warrant or its equivalent to restrain the unbridled discretion of the inspecting officers. As the majority of the Court put it in *Michigan v.*

*Tyler*, —— U.S. ——, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486 (1978), "For routine building inspections, a reasonable balance between . . . competing concerns is usually achieved by broad legislative or administrative guidelines specifying the purpose, frequency, scope, and manner of conducting the inspections." No guidelines or other restrictions of any sort upon the discretion of inspecting Coast Guard officials are found in the applicable statutes or regulations at issue in this case.

The Court is not unmindful of the fact that vessel inspections have unique features, just as border patrol checks, industrial safety inspections, and airport searches. Vessels move freely and are generally not confined to particular sealanes. Thus, a particular vessel could elude inspection if a warrant must be secured upon a refusal to consent to an on-board inspection, unless suspicious circumstances justify immediate boarding. But this problem may be overcome by issuance of administrative guidelines to patrol vessels in advance, specifying times, areas, frequency and other criteria for boarding boats.

prior ruling granting the motion to suppress will stand.[11]

The government's reliance on *United States v. Peltier*, 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975), to bar suppression of the seized marijuana is misplaced. In *Peltier*, the Court declined to apply the exclusionary rule of *Almeida-Sanchez*, above, retroactively to seizures made prior to the date of that decision. But it specifically rejected the suggestion that the defendant in the case in which the exclusionary ruling is made is not entitled to its benefit. 422 U.S at 542, note 12, 95 S.Ct. 2313.

### III. DEFENDANTS' MOTION TO SUPPRESS INCULPATORY STATEMENTS

Three hours after defendants' arrests, DEA special agent Keener advised defendant Gallina of his *Miranda* rights and asked

"GALLINA if he wanted to make any statements. *GALLINA said that he would rather talk to an attorney first.* S/A Keener then told GALLINA it didn't appear that they had lived on the vessel very long and *then S/A KEENER asked* if the marihuana came from another vessel or from another place. GALLINA said 'Let me put it this way, we were 1½ weeks out of Mexico.'" (DEA Case Report, January 20, 1978, p. 8) (upper case original; emphasis added).

Gallina moves to suppress this statement as having been obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v. Kinsman*, 540 F.2d 1017 (C.A. 9, 1976); *United States v. Womack*, 542 F.2d 1047 (C.A. 9, 1976). In light of the Court's ruling above, and inasmuch as the government has stipulated that it does not intend to use defendant's statement at trial, the Court finds it unnecessary to reach this issue.

IT IS SO ORDERED.

11. Nothing in this order is to be taken as affecting the Coast Guard's authority to board vessels (a) for the purpose of conducting warrantless customs searches at the border or its functional equivalent under the circumstances authorized by prior court decisions, or (b) for the purpose of conducting warrantless safety inspections upon observation or reasonable suspicion of unsafe conditions under the circumstances authorized by prior court decisions involving individualized suspicion.