Ive Arlington Swan, Atty. Gen., Alan E. Cobb, Asst. Atty. Gen., Charlotte Amalie, St. Thomas, V. I., for appellees.

Before GIBBONS, WEIS and GARTH, Circuit Judges.

GIBBONS, Circuit Judge.

Orlando Remak, Yvonne Remak and Rolando Remak appeal from a summary judgment in favor of Leroy A. Quinn, Commissioner of Finance, on their petition for redetermination of income tax liability on the proceeds of a winning ticket on the Virgin Islands Lottery. They contend that the ticket was purchased by Orlando and Yvonne Remak, alien parents of Rolando Remak, infant citizen, and that the proceeds belong to him. If Rolando is the owner he is eligible for a special tax subsidy of $14,829.80. If the parents are the owners, they as aliens are not eligible for that subsidy. 26 U.S.C. § 934 (1976); Session Laws of the Virgin Islands 1971, Act No. 3035.

The district court granted summary judgment in reliance on the Remaks' answers to interrogatories, which established that Yvonne Remak purchased the winning ticket, personally delivered it to the lottery office, and received a check to her order for $50,000. The proceeds were disbursed as follows:

(1) $18,120.00 was paid to the Department of Finance,

(2) $28,898.02 was used to construct an addition to the Remak family home,

(3) $2,500.00 was used for a family vacation,

(4) $481.98, the balance, went for miscellaneous expenditures.

Against these rather compelling and undisputed indicia of dominion and control by the parents, there is on file their affidavit indicating their present willingness to convey to Rolando all or a one-half interest in the house to which the improvements were made, and their statement that they gave the lottery ticket to Rolando.

The district court ruled that the conclusory allegation, under oath, that the parents had given the ticket to their son was insufficient as a matter of law to raise a fact issue as to ownership of the lottery proceeds. We disagree. While most of the circumstances are inconsistent with donative intention or completion of a gift, we think it possible that after hearing the testimony a factfinder might credit the parents' version. Since there was on file an affidavit alleging that they made a gift of the ticket the court should not have resolved that issue without an evidentiary hearing.

The summary judgment will be reversed, and the case remanded for an evidentiary hearing.

UNITED STATES of America, Appellee,

v.

Gilliam Raymond COATS a/k/a Jack Long, a/k/a Bill Walters, Appellant.

No. 79–5015.

United States Court of Appeals, Fourth Circuit.

Argued July 12, 1979.

Decided Nov. 29, 1979.

Rehearing and Rehearing En Banc Denied Jan. 24, 1980.

38

Bobby Lee Cook, Summerville, Ga. (Cook & Palmour, Summerville, Ga., on brief), and L. Patten Mason, Morehead City, N. C. (Mason & Phillips, P. A., Morehead City, N. C., on brief), for appellant.

Herman E. Gaskins, Jr., Sp. Asst. U. S. Atty., Raleigh, N. C. (George M. Anderson, U. S. Atty., Raleigh, N. C., on brief), for appellee.

Before RUSSELL, Circuit Judge, FIELD, Senior Circuit Judge, and WIDENER, Circuit Judge.

DONALD RUSSELL, Circuit Judge:

Defendant/appellant appeals from his conviction under 21 U.S.C. §§ 952(a), 960(a)(1), and 963, of conspiracy to import marijuana. His primary contention on appeal concerns the search and seizure of the vessel used to transport the marijuana. The facts pertinent to that search and seizure may be briefly stated: in January of 1978 the United States Coast Guard was engaged in patrolling the Caribbean sea lanes for general law enforcement purposes with a special emphasis on drug interdiction. On January 25th the Coast Guard Cutter ALERT spotted the LADY ELLEN, a fishing vessel of North Carolina registry, in the Mona Passage between the Dominican Republic and Puerto Rico. Following

its policy of stopping all United States vessels less than two hundred fifty (250) feet in length, the crew of the ALERT stopped and boarded the LADY ELLEN and inquired of its master the vessel's destination and point of embarkation. At that point the master stated "you got me, I'm coming from Colombia and I have a load of marijuana on board." A search ensued which produced some twenty-five (25) tons of marijuana. The crew then cooperated in a controlled delivery of the marijuana to their co-conspirators waiting in North Carolina. Ultimately, the marijuana was seized and a number of individuals, including the defendant, were arrested and charged with conspiracy to import marijuana.

Defendant contends that the search of the LADY ELLEN was unlawful and that all evidence derived from it should be suppressed. The Coast Guard admittedly had no suspicion concerning criminal activities aboard the vessel. It boarded, pursuant to authority under 14 U.S.C. § 89(a), for purposes of conducting a safety and documentation inspection, and thereafter allegedly acquired probable cause to conduct the search when the master uttered his inculpa-

tory statement. It is the initial boarding which defendant contests.

██ The validity of section 89(a) board-. ings, which may occur virtually anywhere in the world at the discretion of the Coast Guard, presents an intriguing question when measured against Fourth Amendment standards, particularly in light of the Coast Guard's admittedly drug related policy of stopping all vessels under a certain length which are found in Caribbean passages known to be used by smugglers.[1] Yet, tempted though we are, we must decline to consider that question since we conclude that the district court correctly denied the defendant standing to contest the validity of the search.

In *Rakas v. Illinois* (1978) 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387, the Supreme Court declared that only one who has a legitimate expectancy of privacy in property may object to a search of such property, and, while the expectation need not rest on common-law property concepts, such property rights may often be determinative of whether a party has such expectation of privacy as to support his objection to a

1. 14 U.S.C. § 89(a) provides:

The Coast Guard may make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, for the prevention, detection, and suppression of violations of laws of the United States. For such purposes, commissioned, warrant, and petty officers may at any time go on board of any vessel subject to the jurisdiction, or to the operation of any law, of the United States, address inquiries to those on board, examine the ship's documents and papers, and examine, inspect, and search the vessel and use all necessary force to compel compliance. When from such inquiries, examination, inspection, or search it appears that a breach of the laws of the United States rendering a person liable to arrest is being, or has been committed, by any person, such person shall be arrested or, if escaping to shore, shall be immediately pursued and arrested on shore, or other lawful and appropriate action shall be taken; or, if it shall appear that a breach of the laws of the United States has been committed so as to render such vessel, or the merchandise, or any part thereof, on board of, or brought into the United States by, such vessel, liable to forfeiture, or

so as to render such vessel liable to a fine or penalty and if necessary to secure such fine or penalty, such vessel or such merchandise, or both, shall be seized.

The Fifth Circuit, in a long line of cases, has upheld this statute. *United States v. Warren* (5th Cir. 1978) 578 F.2d 1058, 1064–65 (en banc); *United States v. One (1) 43 Foot Sailing Vessel "Winds Will"* (5th Cir. 1976) 538 F.2d 694, 694 (per curiam); *United States v. Hillstrom* (5th Cir. 1976) 533 F.2d 209, 210–11, *cert. denied*, 429 U.S. 1038, 97 S.Ct. 734, 50 L.Ed.2d 749 (1977); *United States v. Odom* (5th Cir. 1976) 526 F.2d 339, 342. *But see United States v. Piner* (N.D.Cal.1978) 452 F.Supp. 1335, 1339–40 (unbridled discretion violates Fourth Amendment absent warrant or probable cause). The Fourth and Fifth Circuits have approved section 89(a) stops on the high seas of foreign vessels which are subject to extraterritorial application of domestic law. *United States v. Dominguez* (4th Cir. 1979) 604 F.2d 304, dated August 10, 1979; *United States v. Cadena* (5th Cir. 1978) 585 F.2d 1252, 1259. The Fifth Circuit also has approved, without relying on section 89(a), searches of American vessels in foreign waters. *United States v. Conroy* (5th Cir. 1979) 589 F.2d 1258, 1265–69, U.S. appeal pending.

property search under the Fourth Amendment.[2] In this case the defendant Coats made no showing of a property right in either the vessel searched or in the property seized.[3] He did not testify at the suppression hearing, even though he might have done so without prejudice to his rights at trial, but relied entirely on the testimony of Breslin, the captain of the vessel, to sustain his claim to privacy.[4]

Breslin stated, during his testimony, that his initial contacts were with the defendant and that it was the defendant who advanced funds for provisioning and equipping the vessel turned over to him for use in the illegal transportation of marijuana from Colombia to the United States. But the defendant represented to Breslin that he was acting under the orders of the top "boss." The defendant introduced Breslin immediately after this statement to a "Sam." Breslin assumed that "Sam" was the top boss, to whom the defendant had referred. Such assumption seemed to be borne out by later circumstances. Accordingly, from the time that "Sam" was introduced to Breslin by the defendant, "Sam" became the controlling, dominant figure in the undertaking. Breslin operated completely from that time on under "Sam's" direction and control. It was "Sam" who directed Breslin where to take the vessel, instructed him by whom he would be met in Colombia when he arrived at the designated point in Colombia and what he should do when he got there. It was "Sam" who made all the arrangements with the local Colombians for the delivery to the vessel of the cargo of marijuana. It was "Sam" who paid for the cargo when it was delivered. When the cargo was finally taken aboard the vessel, it was "Sam" who, using maps and charts, marked out for Breslin the exact course the vessel was to take on its voyage to its proposed destination in coastal

North Carolina, and it was he who provided directions to be followed in the event Breslin encountered any problems on the voyage. Thus, when Breslin ultimately embarked on the voyage, he was operating entirely under the control and direction of "Sam" in arranging to pick up and transport a cargo of marijuana purchased and paid for by "Sam." Breslin's evidence thus indicates that "Sam" was the real operator, the one entitled to the possession and control, of the vessel and that the defendant Coats was simply his agent in earlier contacting and dealing with Breslin.

■ There was accordingly strong and compelling evidence in the record that "Sam" was, as the defendant himself suggested to Breslin, the head man in the illegal undertaking who directed the activities of both the defendant and Breslin and under whose control Breslin was operating the vessel at the time it was seized. It was a reasonable deduction from these undisputed facts that the defendant was merely a subordinate of "Sam," charged with locating a vessel and crew for use by "Sam" in carrying out the illegal undertaking, and that the right of possession and control of the vessel, particularly after it began its voyage to Colombia, was in "Sam" and not the defendant. And this was the district court's finding of fact on which it based its denial of a right to an expectation of privacy on the part of the defendant in either the vessel or its contents. Since such finding was not clearly erroneous, it is binding on us in this appeal.[5]

The defendant also challenges the jury selection plan for the eastern district of North Carolina as failing to comply with the National Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861–1875, and as violating the Fifth and Sixth Amendments. The particular plan at issue here utilizes

**2.** *See United States v. Hunt* (5th Cir. 1974) 505 F.2d 931, 937, *cert. denied*, 421 U.S. 975, 95 S.Ct. 1974, 44 L.Ed.2d 466 (1975).

**3.** *See United States v. Williams* (9th Cir. 1976) 536 F.2d 810, 813, *cert. denied*, 429 U.S. 839, 97 S.Ct. 110, 50 L.Ed.2d 106.

**4.** *See United States v. Williams*, 536 F.2d at 813.

**5.** 3 Wright, Federal Practice and Procedure, § 678 at page 143; *United States v. Jobin* (1st Cir. 1976) 535 F.2d 154, 156; *United States v. Gunn* (5th Cir. 1970) 428 F.2d 1057, 1060.

lists of actual voters for jury selection. The defendant contends that use of this list resulted in an exclusion of 60% of the eligible jury population in the district, and that an alternative source of names should have been used.

The only showing here is that persons who failed to vote in the 1976 general election were excluded from consideration for jury duty. Absent a demonstration that some cognizable group has thereby been systematically excluded or substantially under-represented, this type of exclusion does not violate constitutional principles.[6] Nor does it fail, as defendant suggests, to comply with the policies and directives of the Act. As defendant's own figures demonstrate, use of voter registration lists rather than actual voter lists would increase the source from 40% of those eligible to 64%, thus still excluding 36%. Yet both types of lists are expressly approved by the Act. 28 U.S.C. § 1863(b)(2). Nor is any supplementation of names by use of alternative lists required absent a showing that voter lists do not represent a fair cross-section of the community.[7] With no demonstration of under-representation or systematic exclusion of any cognizable group, that showing has not been made here.

We have given careful consideration to defendant's other grounds of appeal and find no errors therein. Accordingly, the judgment of conviction is

*AFFIRMED.*

---

6. *Castaneda v. Partida* (1977) 430 U.S. 482, 493–94, 97 S.Ct. 1272, 51 L.Ed.2d 498; *Brown v. Allen* (1953) 344 U.S. 443, 470–74, 73 S.Ct. 397, 97 L.Ed. 469 (opinion of Mr. Justice Reed, announcing judgment).

7. *United States v. Test* (10th Cir. 1976) 550 F.2d 577, 584, 586 n. 8 (en banc); *United States v. Brady* (9th Cir. 1978) 579 F.2d 1121, 1131, *cert. denied*, 439 U.S. 1074, 99 S.Ct. 849, 59 L.Ed.2d 41; *United States v. Ross* (9th Cir. 1972) 468 F.2d 1213, 1216, *cert. denied*, 410 U.S. 989, 93 S.Ct. 1500, 36 L.Ed.2d 188 (1973).