**UNITED STATES of America, Plaintiff,**

v.

**Frederick DOUGLAS, Defendant.**

**No. CR90–0001.**

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

Jan. 24, 1991.

Daniel C. Tvedt, Paul C. Lillios, Asst. U.S. Attys., Cedar Rapids, Iowa, for plaintiff.

Thomas J. O'Flaherty, Cedar Rapids, Iowa, for defendant.

## ORDER ON DEFENDANT'S MOTION TO DISMISS INDICTMENT

HANSEN, District Judge.

This case pends upon the defendant's superseding motion to dismiss indictment, filed November 20, 1990, and resisted by the government on November 23, 1990. Hearing was held on the motion on Novem-ber 26, 1990, when the defendant appeared by his counsel, Thomas J. O'Flaherty, Esq., and the government was represented by Daniel C. Tvedt, Esq., and Paul C. Lillios, Esq., Assistant United States Attorneys. Evidence was received, testimony was taken, and the arguments of counsel were made and heard. The record was left open for the receipt of additional statistical evidence which was filed on December 5, 1990, and the motion was deemed submitted to the court on that date. The court, having now had the opportunity to review the testimony and evidence and to consider the arguments of counsel, makes the following Findings of Fact, determines Conclusions of Law, and enters the following Order.

### Findings of Fact

1. Defendant, a black man, stands charged in a one count superseding indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and 924(e). Defendant's motion to dismiss the indictment alleges that the grand and petit juries selected in this district are being empaneled in violation of the Jury Selection and Service Act of 1968, as amended (28 U.S.C. § 1861 et seq.), and the Amended Plan for the Random Selection of Grand and Petit Jurors for this district (hereinafter the "Local Plan"). Defendant contends that as a result of the alleged violations in the way grand and petit juries are summoned, his constitutional rights to a fair trial by a jury drawn from a fair cross section of the community have also been violated because black citizens are underrepresented in the summoned jurors. He seeks alternate remedies of (1) dismissal of the indictment or (2) a stay of proceedings until "such time as a jury can be selected in conformity with the law." Defendant's motion at 1. The government resists the motion and claims there have been no substantial violations of the jury selection laws.

2. On February 6, 1989, this district's Local Plan was approved by the Eighth Circuit Judicial Council. The stated purpose of the Local Plan is to satisfy and implement the policies declared in the Jury

Selection and Service Act of 1968 to insure that all litigants in federal court "have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes" and to make sure that "no citizen shall be excluded from service as a grand or petit juror in the district courts of the United States on account of race, color, religion, sex, national origin, or economic status." Local Plan, §§ B(1)(A), (B)(2).

3. The Local Plan further provides in pertinent part:

D. Source of Names. The names of prospective grand and petit jurors shall be selected at random from voter registration lists of all the counties within each division.... The judges of this district find that such lists represent a fair cross section of the community in this district.

F. Master Jury Wheel.... The names and addresses of all persons randomly selected from the voter registration lists of the last presidential general election shall be placed in the master jury wheel for that division.

4. The Voter Registration Section of the General Services Administration for the State of Iowa is a central repository of voter registration information in this state. It also provides voter registration computer services to 65 of Iowa's 99 counties, and for those 65 counties it can, at any one time, furnish current voter registration information. The other 34 counties maintain their own voter records and send the information to Des Moines at various intervals. Douglas Lovitt and Burlene Baker, his administrative assistant, are the persons in the Voter Registration Section with whom the Clerk of Court works to produce the names of prospective grand and petit jurors for this court. In September, 1988, a meeting was held in Des Moines between Mr. Lovitt, Ms. Baker, Mr. William Kanak (the Clerk of Court for this district), Mrs. Susan Duenow (the deputy clerk of this

court with principal responsibility for jury matters), Mr. James Rosenbaum (the Clerk of Court for the Southern District of Iowa), and his jury deputy. The purpose of the meeting was to make arrangements for the furnishing of new names to fill the jury wheels following the November 1988 presidential election. *See* Local Plan § F (The master jury wheels currently in full force and effect shall be emptied and refilled every four years, not later than June 1 of the year following a general presidential election year.). Ms. Baker recollects that the Clerks of Court told her that she should use the lists of those citizens who actually voted in the presidential election when she prepared the list of names of prospective jury persons for the Plan after the election, and that is what she did when she performed the computer run on April 1, 1989. On April 1, 1989, the Voter Registration Office had an accurate record of all citizens who had voted in the November 1988 election, but it did not have an accurate record of all the then registered voters in each of the 34 counties which maintained their own records.

The state records currently show that on April 1, 1989, there were 386,356 registered voters in the 22 counties which are within the Cedar Rapids/Eastern Divisions[1] of this court. The two most populous counties in that geographic area (Linn and Black Hawk) maintain their own computerized voter registration records. In those same 22 counties, of the 386,356 registered voters, 321,808 of them had voted in the presidential election. It goes without saying that a voter who votes has to be validly registered. What the state office did not know on April 1, 1989, the day it ran the juror selection computer program, was neither the identity nor the gross number of all the registered voters in the 22 counties on the previous general election day.

The "Court Authorization" (defendant's exhibit "C") issued by the Clerk of this Court to Ms. Baker on March 21, 1989, directed her to select and record prospec-

---

**1.** For jury selection purposes, the Cedar Rapids and Eastern Divisions of the court created by 28 U.S.C. § 95(a) are considered a single division.

tive juror names "to be extracted from the Voter Registration Lists" pursuant to the Local Plan. As noted, Ms. Baker used the somewhat smaller list of persons who had actually voted in the preceding presidential election from which to extract the names of prospective jury persons.

5. Black citizens make up 1.57% of the population in the Cedar Rapids/Eastern Divisions of the court, according to the 1980 Census. (The 1990 figures were not available at the time of the submission of the motion.) Black citizens made up .97% of the jurors in the divisions' master jury wheel from which a jury was drawn to try the defendant on November 7, 1990, and out of 500 jurors selected from that wheel to serve as the juror pool from July 1990 to December 1990, black citizens made up 1.40% of those prospective jurors. There were no black jurors among the 50 jurors summoned randomly from the pool for the defendant's November 7, 1990 trial.

### Conclusions of Law

1. The court has personal jurisdiction over the defendant and subject matter jurisdiction over the pending motion.

■ 2. A defendant is entitled by the constitution to a jury that represents a fair cross section of society. *Taylor v. Louisiana*, 419 U.S. 522, 530, 95 S.Ct. 692, 697, 42 L.Ed.2d 690 (1975). Title 28, U.S.C. § 1861, statutorily implements that right in the federal courts. *United States v. Black Bear*, 878 F.2d 213, 215 (8th Cir.1989).

■ 3. In *Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979), the Supreme Court said:

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

In applying *Duren* to the facts of this case, the court first concludes that black citizens are a "distinctive group" in the community.

> A group of people is distinct when they have a shared attribute that defines or limits their membership, and when they share a community of interest.

*Black Bear*, 878 F.2d at 214 (holding that Indian people in South Dakota are distinct and form a cultural community).

Secondly, the court concludes that the representation of black citizens in the four-year master jury wheel and in the actual juror pool in effect in the last six months of 1990 and from which the defendant's jury venire was chosen, is fair and reasonable in relation to the number of black citizens in the 22 counties constituting the Cedar Rapids/Eastern Division of the court. The percentage of black citizens in the 22-county "community" is 1.57%. The percentage of black citizens in the master jury wheel for that "community" is .97%, a deviation of .6%, while the percentage of black citizens in the 500 person pool drawn from that same "community" was 1.40%, a deviation of .17%. In *United States v. Whitley*, 491 F.2d 1248 (8th Cir.), *cert. denied*, 416 U.S. 990, 94 S.Ct. 2399, 40 L.Ed.2d 769 (1974), a case arising out of the Southern District of Iowa, the Eighth Circuit found that a deviation of 2.05% standing alone was "simply too slight to establish a prima facie case of knowing or intentional exclusion," relying on such cases as *Swain v. Alabama*, 380 U.S. 202, 207–08, 85 S.Ct. 824, 828–29, 13 L.Ed.2d 759 (1965), where the Supreme Court determined a deviation of more than 10% did not prove purposeful discrimination. Here, as in *Whitley*, the deviations of .17% and .6% "can easily result from the probabilities inherent in the random selection system or the lack of majority status of an inordinately large proportion of the black population or a combination of these factors." *Whitley*, 491 F.2d at 1249.

■ Because there is no prima facie showing of underrepresentation of black citizens in the jury wheels or pools, the third element of *Duren* need not be considered, except to point out that the evi-

dence wholly fails to show any systematic exclusion of black prospective jurors. Iowa's voter registration laws, Iowa Code Chapter 48, contain no suspect voter registration qualifications, and all Iowa citizens age 18 and over are eligible to register to vote without regard to race, creed, sex, or national origin. Government exhibits 5, 6, and 7 clearly show no systematic exclusion of black citizens from the qualified juror pool, the percentage of black citizens in the qualified pool studied in those exhibits exceeds the percentage of black citizens in the unqualified pool, and both such percentages are well within the tolerances approved in *Whitley*.

■ Defendant's frequent references to the fact that the 50–person venire called for his case contained no black prospective jurors are of little value in assessing whether or not black citizens have been systematically excluded. There is "no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population." *Taylor*, 419 U.S. at 538, 95 S.Ct. at 701–02. "Defendants are not entitled to a jury of any particular composition." *Id.* (citing cases). Nor is a defendant "constitutionally entitled to demand a proportionate number of his race on the jury which tries him." *United States v. Whiting*, 538 F.2d 220, 222 (8th Cir.1976) (citations omitted). *See also United States v. Turcotte*, 558 F.2d 893, 895 (8th Cir.1977) ("The Constitution does not guarantee a defendant a proportionate number of his racial group on the jury panel or the jury which tries him; it merely prohibits deliberate exclusion of an identifiable racial group from the juror selection process.")

> The fact that a single panel does not represent a cross-section of the larger community cannot establish that the selection process was discriminatory.

*Whiting* at 222.

Defendant has failed to show that members of his race are systematically excluded from jury service by the use of voter lists. The record in this case, including the testimony of the expert witness, Dr. Shipman, demonstrates the opposite. The two studies cited by Dr. Shipman concluded that race is not a good predictor of whether or not a given person will vote, and, outside of the deep South, race itself does not seem to be an important factor in who does or does not vote. Tr. 29, 36 (attached to defendant's motion for taking of judicial notice, filed November 21, 1990).

Accordingly, the defendant has failed to carry the burden imposed by the *Duren* test, and his motion must be denied.

■ 4. Defendant's next contention is that the use of the list of persons who *actually voted* in the presidential election, as opposed to those who were *registered to vote*, to prepare the list of potential jurors is such a substantial departure from the Local Plan as to render the selection process illegal and unconstitutional. Defendant claims such a use of the list of actual voters to be "ultra vires" of the Local Plan.

It is of importance to understand two things. First, the statute, 28 U.S.C. § 1863(b)(2), specifically provides that *either* the "voter registration lists *or the lists of actual voters* of the political subdivisions within the district or division" may be used as the basic source of names for prospective jurors (emphasis added). The statute makes no preference between the two. Secondly, in this case, the use of the list of actual voters has resulted in a constitutionally valid cross section of the 22 county "community." The burden is not on the government to prove that the plan as implemented produces a valid cross section of the community, although in this case the evidence clearly shows that it does. Rather, the burden is on the person challenging the plan to show that, as implemented, the Local Plan results in an underrepresentation of a distinctive group (in this case black citizens) due to a systematic exclusion of that group in the selection process. The fact that the use of actual voter lists may result in excluding all persons who failed to vote in the particular election does not violate either the fifth or sixth amendments nor the Jury Selection and Service Act. *United States v. Coats*, 611 F.2d 37,

**914**

40–41 (4th Cir.1979), *cert. denied,* 446 U.S. 909, 100 S.Ct. 1836, 64 L.Ed.2d 261 (1980).

Because of the alternative provision of the Federal Act, we perceive no difference between the effect of exclusion for failure to vote and exclusion for failure to register to vote in determining whether the mandate of the Constitution and Act [has] been met, when neither the right to vote nor the right to register [has] been discriminately denied any cognizable group.

*United States v. Cecil,* 836 F.2d 1431, 1447 (4th Cir.), *cert. denied,* 487 U.S. 1205, 108 S.Ct. 2846, 101 L.Ed.2d 883 (1988). The evidence in this case shows affirmatively that neither the right to vote nor the right to register to vote has been discriminately denied to citizens of Afro–American heritage in this state. Nor does the evidence show that race is a factor in determining who registers or who votes in this state.

Title 28, U.S.C. § 1867(a) provides that an indictment may be dismissed if there was a "substantial failure to comply with the provisions of this title in selecting the grand or petit jury." What is required for dismissal is a substantial failure to comply with the Act.

Whether a violation is "substantial" or merely "technical" depends upon the nature and extent of its effect on the wheels and venire from which a defendant's [jury] was derived.

*United States v. LaChance,* 788 F.2d 856, 870 (2d Cir.), *cert. denied,* 479 U.S. 883, 107 S.Ct. 271, 93 L.Ed.2d 248 (1986). In determining whether a particular violation of the Act is substantial, the alleged violation of the Act must be weighed against the underlying principles of the Act. *United States v. Schmidt,* 711 F.2d 595, 600 (5th Cir.1983), *cert. denied,* 464 U.S. 1041, 104 S.Ct. 705, 79 L.Ed.2d 169 (1984).

The legislative history states the Act embodies two important general principles:

(1) random selection of juror names from the voter lists of the district or division in which court is held; and (2) determination of juror disqualifications, excuses, exemptions, and exclu-

sions on the basis of objective criteria only. These principles provide the best method for obtaining jury lists that represent a cross section of the relevant community and for establishing an effective bulwark against impermissible forms of discrimination and arbitrariness.

*United States v. Bearden,* 659 F.2d 590, 600–01 (5th Cir.1981) (quoting H.R.Rep. No. 1076, 90th Cong., 2d Sess. (1968), *reprinted in* 1968 U.S.Code Cong. & Admin.News 1792, 1793), *cert. denied, North Side Realty Assoc., Inc. v. United States,* 456 U.S. 936, 102 S.Ct. 1993, 72 L.Ed.2d 456 (1982). In the case at bar, the defendant makes no allegation that the second principle has been violated, only the first.

The same analysis is applied for claims alleging a failure to comply with the Local Plan. The court must determine whether noncompliance with the Plan has resulted in a substantial violation of the Act and its underlying principles. *The mere claim the Plan has been violated is insufficient, absent a further showing the Act itself and its goals have been frustrated.*

*Id.* at 601 (citations omitted) (emphasis added).

■ In this case, the defendant has wholly failed to prove any violation of the Act. He has proved a violation of the Local Plan in that the Voter Registration Section used the list of actual voters instead of those who were registered to vote in compiling the master wheels, but since the Act itself authorizes the use of the list of actual voters, he cannot and has not shown that one of the fundamental principles of the Act has been violated. In short, under the evidence in this case, the use of actual voter lists has resulted in full compliance with both the Act and the Constitution rather than any violation of either of them. Defendant's motion to dismiss the indictment on this ground must be denied.

5. Defendant also contends that the Clerk has failed to comply with those provisions of § T of the Local Plan requiring public notice of the place and time of the random drawing of starting numbers and

the actual drawing of prospective jurors' names. The evidence offered at the hearing failed to prove any such violation with respect to such matters. On the contrary, the testimony of the deputy clerk of court for jury matters showed compliance with the Plan's notice requirements.

6. Any dispute concerning the defendant's contention that he did not receive a list of the 50 member panel called for his trial ten days before the trial date as required by § H of the Local Plan is now moot since the defendant was not put to trial before that panel. The jury clerk testified that in some instances she is unable to give the full ten days notice because the order setting the trial date is not filed more than ten days before trial, but that she gives as much notice as she can of the makeup of the panel. It appears to the court that the proper remedy, if and when such an event occurs, is for the defendant to seek a continuance; dismissal of the indictment for such a reason would seem particularly unwarranted.

7. Defendant's motion was directed against both the grand jury which indicted him and the petit jury panel called to try him. Since both grand juries and petit juries are chosen pursuant to the same provisions of the Local Plan, the court's findings and conclusions that no substantial violation of the Act or the Constitution has been shown applies with equal force to both the grand jury which indicted the defendant and any petit jury which will try him.

### ORDER:

Accordingly, It Is Ordered:

1. Defendant's superseding motion to dismiss the indictment, filed November 20, 1990, is DENIED on all grounds asserted.

2. Trial in the case is RESET for Tuesday, February 5, 1991, at 9:00 a.m. in the Third Floor Courtroom, United States Courthouse, Cedar Rapids, Iowa.

Done and Ordered.