9 F.3d 1544
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Roscoe EVANS, Jr., Defendant-Appellant.
 No. 92-5566.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: February 26, 1993.
Decided: November 16, 1993.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.
 Walter T. Johnson, Jr., Greensboro, North Carolina, for Appellant.
 Robert H. Edmunds, Jr., United States Attorney, Paul A. Weinman, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.
 M.D.N.C.
 AFFIRMED.
 Before WILKINSON and NIEMEYER, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Roscoe Evans, Jr. pled guilty to possession with intent to distribute crack cocaine in violation of 21 U.S.C.A. §§ 841(a)(1), (b)(1)(B) (West 1981 & Supp. 1992) and carrying and using a firearm during a drug crime in violation of 18 U.S.C.A. § 924(c)(1) (West Supp. 1992). Evans, represented by counsel, moved to suppress evidence seized from him incident to his stop and arrest. The district court denied the motion, finding that Evans consented to the search and that the police officers had a reasonably articulable suspicion to stop and search Evans. Finding no clear error in the district court's factual determinations, we affirm.
 
 
 2
 On December 29, 1991, Evans was standing at a telephone booth on Martin Luther King Boulevard in Greensboro, North Carolina, an area known for its high incidence of drug activity. Officer Scott Sanders, a Greensboro police officer, was on duty that afternoon and was checking the pay telephones in the area because street drug dealers frequently used them to facilitate their business. Officer Sanders observed Evans using one of the pay phones near a gas station in the area. Officer Sanders was driving an unmarked patrol car. Evans was the only person in the area.
 
 
 3
 As Officer Sanders approached the phone booth in his car, Evans appeared to make eye contact with him, and then hunched closer into the phone booth in a furtive manner. Officer Sanders saw Evans continue to watch him as he passed the phone booth and turned the car around to assume a position from which he could further observe Evans.
 
 
 4
 Officer Sanders radioed for assistance, and a second officer, Robert Edwards, came to the area several minutes later. The officers then approached Evans with their cars from opposite directions. As OfficerEdwards exited his vehicle and approached Evans on foot, Evans placed his hand inside his jacket pocket, then removed his hand and started to leave the phone booth.
 
 
 5
 Officer Edwards began a conversation with Evans, and Evans produced a college identification card bearing his name and photograph upon Edwards' request. As Evans reached into his pocket to get the identification card, Officer Edwards saw the edges of a clear plastic bag. Officer Edwards then asked Evans where he was going. Evans replied that he was going to visit a friend in the area, but could not remember his name. When Officer Edwards offered to help him find the house, Evans replied that he could not remember where the house was located.
 
 
 6
 Based upon Evans' strange behavior and vague answers, Officer Edwards became concerned that Evans was carrying either drugs or a weapon. He asked Evans for permission to search his person, and Evans replied, "No, go right ahead." Officer Edwards reached into the jacket pocket where he had seen the plastic bag and found a clear plastic bag containing two "cookies" of crack cocaine. Evans was then arrested and handcuffed, and during a search incident to his arrest, the officers found a loaded .25 caliber pistol in the same jacket pocket. At no time prior to his arrest was Evans told that he was not free to leave, nor did he ever ask or attempt to leave the area.
 
 
 7
 Evans contended at the suppression hearing and on appeal that the positioning of the patrol cars and police officers resulted in his being surrounded by five officers who responded to the scene in their cars.* Evans contended that this constituted a seizure, because he was not free to leave, and that the search thereafter was without probable cause and was therefore unlawful. The district court found that the search was consensual, that a reasonable person would not have thought he was not free to leave, and that the officers had articulable suspicion to stop and search Evans. Accordingly, the district court denied the suppression motion.
 
 
 8
 We uphold a district court's determination that a defendant voluntarily consented to a search unless that decision is clearly erroneous. United States v. Coats, 611 F.2d 37, 40 (4th Cir. 1979), cert. denied, 446 U.S. 909 (1980). Our review of the record reveals that the district court properly found that Evans voluntarily consented to the search, and that the officers had reasonably articulable suspicion to stop and search Evans.
 
 
 9
 The totality of the circumstances surrounding this incident support the district court's finding that Evans' consent to search was given voluntarily. Schneckloth v. Bustamonte, 412 U.S. 218 (1973); United States v. Hummer, 916 F.2d 186, 189 (4th Cir. 1990), cert. denied, 59 U.S.L.W. 3702 (U.S. 1991). When Officer Edwards approached Evans and engaged him in conversation, he gave inconsistent and vague answers to simple questions. Officer Edwards asked Evans if he would consent to a search, and Evans replied,"No, go right ahead." Evans clearly consented to the search, and did not possess a reasonable belief that he was not free to refuse the search request or leave the area at any time.
 
 
 10
 The district court also correctly found that the officers were justified in conducting a stop and search of Evans. An officer who observes specific, articulable facts that would reasonably lead him to conclude that an individual is engaged in unlawful activity is justified in making a limited "seizure" of that person to investigate the activity further. Terry v. Ohio, 392 U.S. 1 (1968).
 
 
 11
 Based on the high drug activity and crime in the area and Evans' suspicious behavior, the district court found that the officers had articulable suspicion for a Terry stop and frisk. We cannot say that such a finding by the district court was clearly erroneous. Accordingly, we affirm the decision of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 *
 Officer Sanders testified that three additional police officers and two patrol cars responded to the scene, but not until after Evans was in custody and in a patrol car. The district court explicitly credited the testimony of the police officers at the suppression hearing